IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.   CRIMINAL ACTION NO. 2:18-cr-00186

CONNOR ANTHONY PUTILLION

MEMORANDUM OPINION AND ORDER

Pending before the court is the defendant's Objections to the Magistrate Judge's Detention Order [ECF No. 36], which the court has construed as a Motion for Revocation of that detention order under 18 U.S.C. § 3145(b). I have reviewed the transcripts of both detention hearings and all available evidence. For the following reasons, the court **DENIES** the defendant's Motion and **ADOPTS** the Magistrate Judge's Order.

I.   Background

The defendant, Connor Putillion, is accused of transporting a minor in violation of 18 U.S.C. § 2423(a), (e). On August 30, 2018, the Magistrate Judge held a preliminary hearing and a detention hearing. The parties presented witness and offered exhibits. The following factual background was elicited: The defendant is a decorated Marine. He was part of the security detail for the Commandant of the Marine Corps, the Secretary of Defense, and the President. He also gave pentagon

tours to high-level officials. He had the second highest level security clearance. The evidence indicates that the defendant is smart and accomplished, but deceptive.

On May 27, 2017, the defendant drove his 13-year-old sister-in-law to Alexandria, Virginia, where he and his wife resided. The minor had been experiencing emotional issues, which grew to the point where she was self-harming. The trip was an opportunity for the minor to get away and visit her sister. The defendant drove the minor himself and is accused of playing the "nervous game"[1] during the car ride. He then allegedly asked the minor questions about her sexual experiences with her boyfriend. She became anxious. While doing this, he also purportedly kept the minor's cellphone from her.

The evidence indicates that that evening, after his wife had gone to bed, the defendant again asked about the minor's sex life with her boyfriend before the defendant rubbed the minor's vagina hard through her pajamas. The minor was eventually able to contact her mother, who drove to Virginia from her home in Ripley, West Virginia, because the minor expressed that she considered cutting herself due to her mounting anxiety. The evidence presented was that after these events, the defendant sought nude photos of the minor over Snapchat, a smartphone application that allows individuals to share photos and texts that are automatically erased after a matter of seconds. The minor has since received extensive professional counseling.

---

[1] The "nervous game" is where a person places his or her hand on another's thigh and slowly moves it toward the other's genital area until the other becomes "nervous."

Examination of the defendant's phone revealed disturbing videos. One video shows the defendant purportedly sexually assaulting his unconscious wife, who may or may not have been under the influence. The wife has since alleged that she had no knowledge of the video and that she did not consent to the sexual contact. A second video contained what appears to be child pornography. It shows an unknown 12 to 13-year-old-girl masturbating with an electronic toothbrush and performing other sexually explicit acts. In addition to the federal charge, there are two pending state court cases against the defendant, one for soliciting a minor and another for sexually assaulting his estranged wife.

The defendant had been on bond between January 2018 and his arrest in this matter on August 23, 2018. His mother and 90-year-old grandmother are each willing to continue putting their houses up for bond to allow the defendant to stay with them. His mother and grandmother live in Ripley. The minor victim also lives in Ripley.

At the first detention hearing, the Magistrate Judge found by clear and convincing evidence that there was no condition or combination of conditions that would assure the safety of any member of the community and ordered the defendant detained. On September 12, 2018, the defendant Objected to the Magistrate Judge's finding. He argued that he posed no risk of nonappearance and that there had be no problems associated with his release. He also took issue with the fact that the mother's house was near a grade school; he claims that proximity to a school is a non-issue and that nearly every home in Ripley is near a school. Between his ties to the

community, no prior record, supporting family, the defendant argued for pretrial release.

In turn, the Magistrate Judge held an additional detention hearing on September 24, 2018, and again ordered that the defendant be detained pending trial. The Magistrate Judge, however, said that he would reconsider detention pending the results of a home inspection of the grandmother's home. On October 3, 2018, the Magistrate Judge received the home inspection report and, on October 5, 2018, denied the defendant's Motion for reconsideration. On October 12, 2018, the defendant again objected to the Magistrate Judge's Order [ECF No. 36]. The issue before the court is whether, by clear and convincing evidence, any condition or combination of conditions would reasonably assure the safety of any other person and the community.

## II. Legal Standard

The Bail Reform Act provides that a defendant shall be detained only if a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the defendant as required or the safety of any other person and the community. 18 U.S.C. § 3142(e). "If a person is ordered detained by a magistrate judge, . . . [the defendant] may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). When a defendant seeks the review of a Magistrate Judge's order of detention, the district court must conduct a de novo review. *United States v. Williams*, 753 F.2d 329, 331 (4th Cir. 1985).

4

The district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990); *accord United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988) ("The district court must conduct an independent review to determine whether the magistrate properly found that pretrial detention is necessary."). Additionally, "the district court, while empowered to do so, is not required to hold an evidentiary hearing when no evidence is offered that was not before the magistrate *Koenig*, 912 F.2d at 1193; *accord United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987) (The court is not required to conduct a de novo hearing, but it is required "to exercise independent consideration of all facts properly before it."); *see also Williams*, 753 F.2d at 334 ("[I]n most cases, a trial court's review of a transcript of proceedings would . . . as part of a review of a detention order under 18 U.S.C. § 3145(b) be sufficient to withstand appellate review"). As such, "based solely on a careful review of the pleadings and the evidence developed at the magistrate's detention hearing, the district court may determine that the magistrate's factual findings are supported and that the magistrate's legal conclusions are correct." *King*, 849 F.2d at 490. "The court may then explicitly adopt the magistrate's pretrial detention order." *Id.* at 491.

III. Discussion

If the court finds no condition or combination of conditions will "reasonably assure the appearance of the person as required and the safety of any other person

5

and the community," the defendant must be detained. 18 U.S.C. § 3142(e). In making this determination, a court and must consider specific factors set forth in 18 U.S.C. § 3142(g). These factors include (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person" including, among other factors, physical and mental condition, family ties, community ties, employment, financial resources, past conduct, criminal history, and record concerning appearance at court proceedings; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g).

Section 2423 is a crime of violence. 18 U.S.C. § 3156(a)(4)(C). It is also a crime against a minor. Because it is a crime against a minor, it carries a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community. *See* § 3142(e)(3)(E). The presumption "represents Congress's general factual view about . . . the special risks of danger to the community presented by defendants who commit the crimes to which it attaches." *United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988). A defendant must produce only "some evidence" to rebut this presumption. *United States v. Jessup,* 757 F.2d 378, 384 (1st Cir. 1985). "When a defendant produces such evidence, however, the presumption does not disappear." *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991). "The burden of persuasion remains on the government and the rebutted

presumption retains evidentiary weight." *Jessup*, 757 F.2d at 384. "As such it is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial." *Id.* The court may use the presumption as "evidence that the defendant poses an unreasonable risk of danger." *Id.* "To put it another way, the presumption requires the court to draw an inference of dangerousness when probable cause is established that defendant committed a predicate offense, an inference whose strength depends on all the evidence before the Court." *Id.*

Here, the inference of dangerousness remains strong. The defendant was a highly respected, particularly trustworthy Marine who allegedly preyed on his self-harming, emotionally-troubled, 13-year-old sister-in-law. He allegedly kept her phone from her, preventing her from getting help, and allegedly continued pursuing her for nude photos after the minor's mother drove nearly six hours to pick her up. The defendant has allegedly admitted to all of his conduct; to inappropriately touching the minor victim, asking her about her sexual experiences, and repeatedly seeking nude photos of her.

To be sure, the defendant would have a job working at Facemyer Lumber Company if released. The parties indicate that the defendant has had no issues during his nearly nine months while on bond. He has appeared at all of his hearings and has had no contact with the minor victim. The defendant has no history of drug or alcohol abuse, and the defendant contends that the he could be adequately

7

supervised by his mother and that the proximity to schools of her home is a nonissue because the defendant has never had issues with schools in the past.

But it would be a complete abdication of duty to release the defendant in close proximity to other minors. He is not only accused of crimes against a minor child, he also allegedly possessed child porn concealed on his smartphone and allegedly sexually assaulted his wife and recorded the sexual contact without her knowledge on his smartphone. Charges have been brought for those separate allegations in state court. His mother (his custodian) will not be there for a majority of the day because she works. More importantly, the evidence indicates that the defendant has a pattern of surreptitious behavior, operating in secrecy and in plain sight. He was trusted completely by those he is accused of abusing.

The defendant alternatively seeks to be released under the supervision of his 90-year-old grandmother, but that is hardly more reassuring considering the circumstances of the case and the apparent ease at which the defendant has evaded detection. His grandmother's home is also near a school.

The evidence shows that the defendant is intelligent and skilled, and that he has used technology as a predatory tool. The defendant argues that conditions such as curfews, home confinement, and regular reporting and visitation would be adequate to monitor him. But those are insufficient to prevent the defendant from having access to technology, the tool he used in conjunction with alleged criminal

activity. Technology is cheap and easy to conceal; the proposed conditions or combination of conditions would not adequately protect the community.

On the final factor, Ripley is a small town. It is very possible that the defendant will cross paths with the minor victim if released or would otherwise have access to other potential victims. The risk is too high that the defendant would encounter the minor victim and could cause additional harm. The weight of the factors favors detention.

### IV. Conclusion

I **FIND** by clear and convincing evidence that no condition or combination of conditions could protect the safety of other persons and the community. I **DENY** the defendant's Motion [ECF No. 36] and **ADOPT** the Magistrate Judge's Order to Detain the defendant pending further proceedings [ECF No. 28].

Accordingly, the court **ORDERS** that the defendant continue to be detained pending trial. The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: November 5, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE